Myrtle Earnest v. State.

No. 1999. Decided December 11, 1912.

Rehearing Denied January 15, 1913.

1.—Murder—Aggravated Assault—Circumstantial Evidence.

Where, upon trial of murder, the defendant was convicted ·of aggravated assault, the evidence showing that defendant and her husband and the deceased child of the defendant by a former marriage lived together, and the facts and circumstances showed that no other person except these two had an opportunity of inflicting the injury upon the deceased, and the circumstances in evidence authorized the jury to find that defendant was the person who inflicted the injury, the evidence sustained the conviction; the court having properly submitted a charge on the law of circumstantial evidence.

2.—Same—Charge of Court—Requested Charges.

Where defendant was convicted of aggravated assault, the defendant's complaint of the court's refusal to submit special charges relating to murder passed out of the case.

3.—Same—Charge of Court—Admissions and Statements of Defendant.

Where the conviction for aggravated assault under an indictment for murder was largely based on the admissions of the defendant, and the court properly submitted a requested charge instructing the jury that the State was bound by these admissions unless they were shown to be untrue, etc., there was no error.

**4.—Same—Chastisement—Child.**

Where, upon trial of murder and a conviction for aggravated assault, the evidence showed that the deceased who was defendant's child by a former marriage had received injuries from the chastisement administered by the defendant, and the court submitted this issue to the jury, there was no error in refusing a special charge on the same issue.

**5.—Same—Charge of Court—Aggravated Assault.**

Where defendant was charged with the murder of her own child, and the evidence showed that she administered to same an unmerciful chastisement, but there was no evidence as to a specific intent to kill, the court correctly charged on aggravated assault.

Appeal from the District Court of Lynn. Tried below before the Hon. H. C. Randolph, special judge.

Appeal from a conviction of aggravated assault; penalty, a fine of $25 and thirty days of confinement in the county jail.

The opinion states the case.

*G. E. Lockhart* and *W. D. Benson* and *E. S. Rowe* and *G. W. Perryman* and *L. W. Dalton,* for appellant.—On the question of the insufficiency of the evidence; Ellison v. State, 59 Tex. Crim. Rep., 3, 127 S. W. Rep., 542; Harris v. State, 28 Texas Crim. App., 308; Josef v. State, 34 Texas Crim. Rep., 446; McCowan v. State, 51 id, 205; Sheppard v. State, 17 Texas Crim. App., 74.

On question of court's charge on aggravated assault: Orner v. State, 65 Tex. Crim. Rep., 137, 143 S. W. Rep., 935.

On question of imputing crime to another: Dubose v. State, 10 Texas Crim. App., 230; Ex Parte Gilstrap, 14 id, 240; Gilder v. State, 61 Tex. Crim. Rep., 16, 133 S. W. Rep., 883.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—The appellant was indicted, charged with the murder of her little two or three year old girl. When tried she was convicted of committing an aggravated assault on the child.

The justice of the peace testified that on the night of June 1st he was notified of the death of the little girl, and he and Dr. Bickley and others went to the residence of defendant next morning and examined the body of the child. In describing the appearance of the body he says: "I saw marks on its back, and towards the lower end of the back there were lacerations of the skin, broken at these marks. These lacerations I would estimate, were from three-quarters of an inch to one and one-quarter inches long, and some might have been possibly one and one-half inches long, and the marks themselves were from two inches to four and one-half inches, but I think there was but one mark, and that was on the right side, that approached four and one-half inches in length, or if not, then very near that, and these marks, from the best of my recollection, not measuring them, I think were about one-half inch apart, and then in the center of the

back there were some of them crossed; those on the left side were at a greater angle from the spinal column than those on the right, while none of them were parallel with the spinal column; and then there were marks just under the shoulders, the top part of the back that reached down nearly to the point of the shoulder blade. They were not so thick on the top of the back, but to the best of my recollection I would say 6 or 8 up there.. There was a discoloration about the face, on one cheek and up onto the forehead. I can't tell anything only it was a discoloration, purplish in hue.''

Dr. Bickley testified that he examined the child after its death, saying: ''I found marks and stripes running in different directions on the child's back when I turned it over. I don't think I could approximate the number—twenty-five or more. There was a great number of them. They were from the shoulders beyond the hips. Some of them had the appearance of breaking through the outer covering of the skin; the outer part, just the outer part. From my examination the marks looked to be of different ages. I don't think I could approximate the number of them that had cut through the skin. I don't know the number, whether it might have been one-quarter or one-half of them. I don't remember. There was a dark splotch on the bowels. As well as I remember, on the right side a little below and to the right of the umbilicus. Above the groin. I suppose the splotch was about the size of a dollar, something like that as well as I remember. I do not think I noticed any bruises on its face anywhere. As well as I remember, there was a splotch along here, on its cheek. The skin was not broken or lacerated, just a mark, and that was the only thing I found anywhere about its face or head. I had seen that child in its lifetime. I would suppose it was about two and one-half years old or possibly somewhere along there at the time of its death. It was a girl. I always considered it a healthy looking child. I considered it a bright active child.'' However, he would not testify positively that these wounds caused its death, although he stated if the wound in the stomach was inflicted with sufficient violence it might do so. No other witness testified positively that this caused its death, and this probably accounts for the fact that the jury did not find appellant guilty of murder in any degree.

No one saw appellant inflict any of these blows. This was her child by a former husband, she having recently married Will Earnest. It is earnestly insisted that the testimony is insufficient to sustain a conviction, as no one saw her inflict these wounds. That some one was guilty of grossly mistreating this child is amply proven by the above testimony. She and her husband and the child lived together, no one else living with them so far as this record discloses. So the facts and circumstances would clearly point to her or her husband as the person who had thus inhumanly whipped the child—no other person having an opportunity to do so as disclosed by the record. Neither she nor her husband testified in the case as they had a right not to do.

So we must examine the record and see if the facts and circumstances individuate which one of the two did it.

That they were both lacking in love and affection it is manifest by the condition of the child when found; that the child suffered from a lack of care and attention amounting to almost criminal negligence, is also shown by the record and the blows on the body, but these circumstances would not authorize a conviction, because applicable to each of them. However, the testimony does not show that Will Earnest ever maltreated the child, that is, inflicted corporal punishment, while the testimony would indicate that appellant did—in one instance it is shown that appellant threw the child out of the house, the witness saying: "I saw her pull her hair, push it out of the house, etc., at my house. It kept crying for something to eat and she told me not to give anything to it, and it came to me again for something to eat and she jerked it up and threw it out of the house; sorter slung it out by the hair, and shook it by the hair,—shook it rather severely, I would think, if it had been one of my children." Other facts and circumstances are in evidence showing overt mistreatment by appellant, but it may be said that these facts, while showing that appellant was a person likely to commit the acts, yet do not show her to be the person who did do so. But when we take all the facts and circumstances in evidence, we think the jury was authorized to find that she was the person who striped this poor little child's body in the manner it is shown to have been lacerated. The doctor, and all the witnesses who testify to seeing the body, say that some of the stripes and cuts were freshly made, at least, so recently as not to be "scabbed over." It is shown by witnesses that appellant stated at the time of the death of the child that her husband had been absent all that day at a neighboring town, only returning about the time she says she found it dying in the dugout near their dwelling. The evidence satisfactorily shows that a portion of the wounds and stripes must have been made on its body on the day of its death, and she and she alone is shown to have been in position to have administered them, and under these circumstances we think the jury was authorized to return the verdict they did. The court instructed the jury:

"In this cause the State relies for conviction upon circumstantial evidence, and in this connection you are charged: That in order to warrant a conviction of a crime on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by competent evidence, beyond a reasonable doubt; all the facts necessary to the conclusion must be consistent with each other and with the main facts sought to be proved; and the circumstances taken together must be of a conclusive nature, leading, on the whole, to a satisfactory conclusion and producing, in effect, a reasonable and moral certainty that the accused, and no other person, committed the offense charged.

"But in such cases it is not sufficient that the circumstances coin-

cide with, account for, and therefore render probable, the guilt of the accused. They must exclude to a moral certainty every other reasonable hypothesis except the guilt of the defendant, and unless they do so beyond a reasonable doubt, you will find the defendant not guilty.''

It is thus seen that the charge fairly and fully presented the case from the point of a case depending entirely on circumstantial evidence, and the jury found that the testimony excluded every other reasonable hypothesis than that appellant inflicted the blows that caused these lacerations on the child's body, and we think the evidence justifies such a conclusion.

The jury having found that appellant did not kill, or rather intentionally kill the deceased, those complaints of the charge relating to murder, and those special charges bearing on that issue of the case need not be discussed. The court, however, at the request of appellant, gave the following special charge in addition to his main charge: ''When admissions and statements of the defendant are introduced in evidence by the State, then the whole of the admissions and statements are to be taken together, and the State is bound by them unless they are shown to be untrue by the evidence. Such admissions and statements are to be taken into consideration by the jury in connection with all other facts and circumstances of the case; therefore as the State has introduced in evidence the statements of defendant that on the day of the death of deceased child she had been ironing and was tired and had gone to sleep leaving the child in the yard playing, and when she awoke, she looked for the child and found it in the dugout and thought it was dead and went to her husband and told him that she thought it was dead and they both returned to the child and thought it was dying, the State is bound by such statements unless they are shown to be untrue by the evidence, and they are to be taken by the jury in consideration as evidence in connection with all other facts and circumstances of the case in determining the guilt or innocence of the defendant, and if you find from the evidence that the defendant found the child in the condition she stated it was and did as she stated and the State has not shown by the evidence beyond a reasonable doubt that defendant killed the child, you will acquit her, or if you have a reasonable doubt as to this, you will find the defendant not guilty and so say by your verdict.'' These admissions clearly show that appellant was the only person at home on the day of the death of the child, until she claims to have found it in a dying condition, thus rendering it almost impossible for any other person to have inflicted the fresh wounds found on the child.

The defendant also requested the court to charge the jury: ''If you find from the evidence that defendant chastised her child, yet if you find from the evidence that the chastisement was a moderate correction, you will acquit the defendant, or if you have a reasonable doubt of this you will find the defendant not guilty.'' This was given in the court's main charge, and the jury instructed: ''You are therefore

instructed that if you find the defendant not guilty of murder in the second degree, but do believe beyond a reasonable doubt that the defendant, Myrtle Earnest, did at the time and place set forth in the indictment, inflict serious bodily injury upon the person of Cliffie Patton by beating her, the said Cliffie Patton, with some implement, to the grand jury unknown, at any time within two years prior to the time of filing the indictment in this case, and that said assault exceeded the exercise of the right of moderate correction given by law to the parent over the child, as above defined, you will find the defendant guilty of an aggravated assault and assess her punishment at a fine of not less than $25.00 nor more than $1,000.00, or by imprisonment in the county jail not less than one month or more than two years, or by both such fine and imprisonment, and unless you so believe, beyond a reasonable doubt, you will find the defendant not guilty.''

The court did not err in charging on aggravated assault as complained of in appellant's motion for new trial. If the wounds and stripes on the body of the child were not proven to be absolutely the cause of its death, yet they were conclusive proof that an unmerciful and unwarranted chastisement had been given it, such as in law would render the person administering them guilty of an aggravated assault.

The judgment is affirmed.                                  *Affirmed.*

[Rehearing denied January 15, 1913.—Reporter.]